UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

WENDY BERNDT
N9415 Olde Oak Tree Court
Appleton, Wisconsin 54915

       Plaintiff,

v.

CATHOLIC DIOCESE OF GREEN BAY, INC.
1825 Riverside Drive
Green Bay, Wisconsin 54301

       Defendant

Case No: 21-cv-1285

**JURY TRIAL DEMANDED**

---

## COMPLAINT

COMES NOW Plaintiff, Wendy Berndt, by her counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendant, alleges and shows to the court as follows:

### JURISDICTION AND VENUE

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq.* ("FMLA") and pursuant to 28 U.S.C. § 1343 because this case involves an Act of Congress providing for protection of civil rights.

2. Venue in this District is proper pursuant to 28 U.S.C. 1391(b) and (c), because Plaintiff resides in this District and Defendant has substantial and systematic contacts in this District.

## PARTIES AND COVERAGE

3. Plaintiff, Wendy Berndt, is an adult female resident of the State of Wisconsin residing in Winnebago County with an address of N9415 Olde Oak Tree Court, Appleton, Wisconsin 54915.

4. Defendant, Catholic Diocese of Green Bay, Inc., is a Wisconsin-based corporation with a principal place of business of 1825 Riverside Drive, Green Bay, Wisconsin 54301.

5. Defendant is a covered employer for purposes of the FMLA.

6. At the time of Plaintiff's FMLA leave requests, Plaintiff had been employed at Defendant for twelve (12) months and had worked at least 1250 hours during those twelve (12) months.

7. Plaintiff did not exceed the amount of FMLA leave for any FMLA leave entitlement period.

8. During Plaintiff's employment with Defendant, Plaintiff did not meet the criteria under 29 C.F.R. § 825.217(a), which defines "key employee" as used in the FMLA.

9. During Plaintiff's employment with Defendant, Defendant employed at least 50 employees within 75 miles of Plaintiff's primary work site in Kaukauna, Wisconsin.

10. Plaintiff has satisfied all administrative remedies and all conditions precedent to bringing this action.

## GENERAL ALLEGATIONS

11. In approximately October 2019, Defendant hired Plaintiff into the position of Maintenance working primarily at St. Katharine Drexel, a parish and school within Defendant's "Kaukauna Catholic Parishes" designation, located at 119 West 7th Street, Kaukauna, Wisconsin 54130.

12. During the entirety of Plaintiff's employment with Defendant, Plaintiff was an hourly-paid, non-exempt employee.

13. During Plaintiff's employment with Defendant, Defendant owned, operated, and managed the parishes and schools within its "Kaukauna Catholic Parishes" designation, including but not limited to St. Katharine Drexel.

14. During Plaintiff's employment with Defendant, Defendant established and directed the operational, financial, and employment policies and practices at the parishes and schools within its "Kaukauna Catholic Parishes" designation, including but not limited to St. Katharine Drexel.

15. During Plaintiff's employment with Defendant, Plaintiff utilized Defendant's employment policies, practices, and/or procedures in the performance of her daily job duties.

16. During Plaintiff's employment with Defendant, Defendant supervised and controlled Plaintiff's work schedules, work assignments, hours of work, and work performance.

17. During Plaintiff's employment with Defendant, Defendant oversaw, managed, addressed, and adjudicated Plaintiff's (and other employees') leave requests, employment-related questions, and other workplace issues.

18. During Plaintiff's employment with Defendant, Defendant established the terms and conditions of Plaintiff's employment as identified in its "Personnel Manual," which stated, in part: "If any employee feels he/she has been discriminated against, he/she should bring it to the attention of his/her supervisor or the Director of Human Resources serving the Diocese of Green Bay or the Superintendent of Schools at the Diocese of Green Bay."

19. During Plaintiff's employment with Defendant, Defendant's Human Resources representative(s) investigated Plaintiff's complaint of harassment by her Supervisor.

20. During Plaintiff's employment with Defendant and in approximately April 2021, Defendant's Human Resources representative discussed Plaintiff's work performance with Plaintiff and issued Plaintiff verbal discipline.

21. During Plaintiff's employment with Defendant, Defendant's "Personnel Manual" also stated, in part: "While the Diocese will normally attempt to provide in advance any notice of change, the Catholic Diocese of Green Bay and/or [sic] reserves the right to modify, revoke, suspend, terminate, or change any, or all such plans, policies, or procedures, in whole or in part, at any time with or without notice."

22. During Plaintiff's employment with Defendant, Defendant maintained employment records and other employment-related documentation regarding Plaintiff.

23. In approximately late January 2021 or early February 2021, Plaintiff informed Defendant that her husband was suffering from stage four cirrhosis of the liver, or liver disease.

24. Plaintiff's husband's liver disease is considered a serious health condition under the FMLA.

25. During the year 2021, Plaintiff consistently assisted her husband with activities of daily living because of his liver disease.

26. During the year 2021, Plaintiff consistently provided psychological and physical comfort and reassurance to her husband because of his liver disease.

27. During the year 2021, Plaintiff's husband's liver disease required at least two (2) appointments and treatment visits with his health care provider(s) and/or treating physicians, which also required Plaintiff to transport and/or assist her husband to and from said appointments and treatment visits.

28. In approximately early February 2021, Plaintiff informed Defendant that she needed approximately five (5) days off of work per month in order to care for her husband because of his liver disease.

29. On or about February 12, 2021, Defendant sent a letter, dated February 12, 2021, to Plaintiff, stating, in part: "I am so sorry to learn about your husband's serious health condition and I am hopeful that he can recover in the future."

30. On or about February 12, 2021, Defendant sent a letter, dated February 12, 2021, to Plaintiff, stating, in part: "I received the revised paperwork from you and your healthcare provider on February 10, 2021. The paperwork indicates that you may need to be off a total of 5 days a month in order to care for our husband due to his serious medical condition."

31. On or about February 12, 2021, Defendant sent a letter, dated February 12, 2021, to Plaintiff, stating, in part: "I am approving your intermittent leave of absence request through August 11, 2021."

32. On or about February 12, 2021, Defendant sent a letter, dated February 12, 2021, to Plaintiff, stating, in part: "Please note that your leave is approved for up to 5 days a month and if you should need more time than that, you will need to request another leave of absence."

33. In approximately February 2021, Defendant knew or was aware that Plaintiff's husband was suffering from a serious health condition for which Plaintiff could qualify for FMLA leave.

34. Between approximately February 2021 and July 2021, Plaintiff utilized approved leave at Defendant to care for and assist her husband because of his liver disease.

35. Between approximately February 2021 and July 2021 and as Plaintiff's husband's liver disease worsened, Plaintiff informed Defendant that she would likely need to use more leave than "…5 days a month…" because of her husband's liver disease.

36. In approximately Spring 2021 and/or Summer 2021, and when Plaintiff informed Defendant that she would likely need to use more leave than "…5 days a month…" because of her husband's liver disease, Defendant told Plaintiff to have her husband's doctor "submit new paperwork like you did previously so that you're covered," or words to that effect.

37. In approximately Spring 2021 and/or Summer 2021, Defendant received documentation on behalf of Plaintiff regarding her husband's liver disease and Plaintiff's need for leave from Defendant because of her husband's liver disease.

38. In approximately Spring 2021 and/or Summer 2021, Defendant knew or was aware of Plaintiff's need for leave form work at Defendant because of her husband's liver disease.

39. In approximately Spring 2021 and/or Summer 2021, Plaintiff properly complied with Defendant's notice policies and practices regarding her need for leave form work at Defendant because of her husband's liver disease.

40. On or about July 13, 2021, Defendant terminated Plaintiff's employment.

41. On or about July 13, 2021, Defendant sent a letter, dated July 13, 2021, to Plaintiff terminating Plaintiff's employment and stating, in part: "This decision was made because we cannot continue to accommodate your request for time off to care for your husband. This decision was made after much prayer and is final. We wish you the very best in the future."

## CAUSE OF ACTION – FAMILY AND MEDICAL LEAVE ACT (INTERFERENCE)

42. Plaintiff reasserts and incorporates all paragraphs set forth above as if restated herein.

43. Defendant intentionally interfered with Plaintiff's rights by terminating Plaintiff's employment for using, and/or in order to prevent her from using, protected leave, in violation of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601 *et seq*.

44. As a result of Defendant's intentional violations of the FMLA, Plaintiff suffered damages in the form of loss of wages and other employment benefits and insurance.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing back pay, front pay and/or reinstatement, liquidated damages, pre- and post-judgment interest, and reimbursement for other benefits and expenses to be shown at trial;

2. Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute; and

3. Grant to Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES**

Dated this 8th day of November, 2021

        WALCHESKE & LUZI, LLC
        Counsel for Plaintiff

        **s/ *Scott S. Luzi* _____**
        James A. Walcheske, State Bar No. 1065635
        Scott S. Luzi, State Bar No. 1067405

WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail sluzi@walcheskeluzi.com